IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| STEVEN JAY PINCUS HUETER, ET AL., <br><br> Plaintiffs, <br><br> vs. <br><br> LEALAIALOA FRITZ MICHAEL KRUSE, ET AL., <br><br> Defendants. | CIV. NO. 21-00415 JMS-KJM <br><br> ORDER DENYING PLAINTIFFS' EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER, ECF NO. 12 |

### ORDER DENYING PLAINTIFFS' EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER, ECF NO. 12

### I. INTRODUCTION

This case is yet another action filed by pro se Plaintiffs Steven Jay Pincus Hueter, Faamuli Pete Faamuli, and Michael "Candyman" Kirk ("Plaintiffs"), making similar if not identical claims to earlier-filed actions against Lealaialoa Fritz Michael Kruse, the Chief Justice of the High Court of American Samoa ("Justice Kruse"), and Debra Haaland, the United States Secretary of the Interior (the "Secretary"). Before the court is Plaintiffs' "Ex Parte Motion With Authorities For A Temporary Restraining Order And For Relief In The Nature of Mandamus Under 28 U.S.C. § 1361 Against Federal Defendants to Prevent the

October 25, 2021 Hearing in HCLT 28-2021 for Clear Lack of Any Basis in Jurisdiction Due to Lack of Certificate of Irreconcilable Dispute From the Office of Samoan Affairs" ("TRO Motion").[1]  ECF No. 12.  The TRO Motion, brought ex parte, is DENIED as frivolous, and Plaintiffs are warned that the court may consider sanctions against them if they continue with their abusive filings.

## II. BACKGROUND

To the best of the court's understanding, the factual background of this case is as follows:[2]  On September 23, 2020, AST Telecomm, d/b/a Bluesky Communications ("Bluesky"), operating as a telecommunications carrier in American Samoa, filed a "Complaint for Permanent Injunction" in the High Court of American Samoa against several of the Plaintiffs in this matter—Michael Kirk and Faamuli Pete Faamuli, as well as the Alega Preservation Institute and Rosalia Tisa Faamuli (together, "Alega Defendants").[3]  That case, docketed as HCLT 28-

---

[1] Although Plaintiffs refer to the underlying case filed in American Samoa as 28-2021, ECF No. 12 at PageID # 184, the correct case number is 28-2020.  At times, this case is referred to as "HCLT 28-2020."

[2] The court draws its facts from Plaintiffs' Ex Parte Motion for Temporary Restraining Order, ECF No. 12, and the record in a nearly identical—if not fully identical—case filed earlier this year by Plaintiffs, Civ. No. 21-00226 JMS-KJM.  Unless otherwise indicated, all citations in this Order are to the docket in Civ. No. 21-415 JMS-KJM.

[3] Bluesky apparently initiated the case as simply "Bluesky," and was therefore treated by the High Court as a fictitious entity until it was properly identified as AST Telecomm, LLC, d/b/a/ Bluesky Communications.  *See* Civ. No. 21-00226 JMS-KJM, ECF No. 85-5 at PageID # 1141 n.1.

2020, was originally before Chief Justice Kruse, Associate Judge Fa'amausili, and Associate Judge Muasau.  In its Complaint in that case, Bluesky alleged that it has a prescriptive easement to hang its telecommunications equipment in the Alega Sanctuary, and that the Alega Defendants were interfering with Bluesky's attempts to maintain and repair its equipment within the preserve.  Bluesky also alleged that the Alega Defendants were engaging in a "smear campaign" against Bluesky by publishing materials stating that Bluesky was polluting the marine environment with telecommunications detritus.

On November 12, 2020, the three-judge panel issued an "Order Denying [Bluesky's] Motion for a Preliminary Injunction and to Maintain the Status Quo" (the "November 12, 2020 Order").  *See* ECF No. 12-3.  The court opined that Bluesky had failed to supply sufficient evidence that it possessed an easement over the Alega Defendants' land.  To the contrary, the High Court concluded that "[w]ithout more to evince the landowner's consent, [Bluesky's] rerouting [of infrastructure through Alega] constitutes a blatant trespass."  The court also denied Bluesky's request to enjoin the Alega Defendants' publications, explaining "we are not inclined to invoke equity to enjoin [the Alega Defendants'] first amendment protected activity in the way of printed posters deemed offensive to [Bluesky]."

Pursuant to American Samoa Code § 43.0304,[4] which authorizes a justice to "make such interim orders as he thinks appropriate" in proceedings before the Land and Titles Division, the court ordered both parties to "maintain the status quo for at least a period of 180 days" during which the parties were to attempt to reach an amicable solution. The court also enjoined Bluesky from "failing, to remove all its wiring-related detritus and decaying poles left lying on and around the Alega coastline and beach area."

Finally, although the court issued this preliminary relief, it explained that it lacked jurisdiction to provide any dispositive rulings on the merits. Specifically, the court found there to be "contention among the parties as to whether the subject matter land is 'communal' or 'individually-owned,'" with the Alega Defendants having "put at issue the communal landholding nature of Alega." And, the court explained, it lacked jurisdiction on the merits over cases concerning communally-owned land until the parties completed mandatory

---

[4] Section 43.0304, entitled "Interlocutory orders," states:

> In any proceeding, a justice may, pending final determination of the matter by the Land and Titles Division, make such interim orders as he thinks appropriate. The associate judges sitting in matai title disputes shall refer all requests for ex parte or interim orders to the Chief Justice or Associate Justice for appropriate action, unless the associate judges are in unanimous agreement thereon from entry of judgment and a trial de novo shall be held thereon.

"pretrial proceedings pursuant to A.S.C.A. § 43.0302" before the Office of Samoan Affairs.

On March 2, 2021, Bluesky filed a "Motion to Vacate and/or Amend the November 12, 2020 Order." Bluesky asked the High Court to vacate its ruling that Bluesky "is so enjoined from failing to remove all its wiring-related detritus and decaying poles lying on and around the Alega coastline and beach area." And Bluesky asked the court to enjoin the Alega Defendants from "interference of Bluesky's . . . removal of its cables and wires in Alega." Bluesky alleged that it had been attempting to comply with the November 12, 2020 Order, but that doing so required coordination with the American Samoa Power Authority ("ASPA")—the public utility that owns the poles to which Bluesky's cables are attached. Bluesky further alleged that the Alega Defendants were preventing its clean-up attempts by "unreasonably demand[ing] that Bluesky is not to coordinate and communicate with ASPA regarding the cleanup of debris and poles in Alega."

The High Court held a hearing on the motion on March 31, 2021, presided over by Justice Kruse and Associate Judge Muasau. *See* ECF No. 12-2. During the hearing, Justice Kruse stated that he was "not inclined" to grant Bluesky's motion. He also reiterated that the court lacked jurisdiction over the controversy until the parties obtained a certificate of irreconcilable dispute ("CID") from the Office of Samoan Affairs. Justice Kruse further explained that the High

Court would be joining the American Samoa Government to the case as a necessary party because the Alega Defendants alleged, among other things, that Bluesky polluted areas under the Government's control.[5]  Finally, Justice Kruse reiterated that the November 12, 2020 Order enjoined both parties from disrupting the "status quo" and required Bluesky to remove their detritus from the ground in Alega.  The High Court then issued a formal Order on April 6, 2021 that joined the American Samoa Government as a necessary party to the proceedings and imposed a stay on any further filings going to the merits until the parties obtained a CID from the Office of Samoan Affairs.

        Directly relevant to the instant TRO Motion, Bluesky subsequently filed a Second Motion to Vacate and/or Amend the November 12, 2020 Order ("Second Motion to Vacate").  An initial hearing was held on the Second Motion to Vacate on October 8, 2021 before Justice Kruse and Associate Judges Pomele and Tofili.  *See* ECF No. 12-1.  During that hearing, Justice Kruse did not address the merits of the motion, but instead continued the hearing until October 25, 2021.  One of the Plaintiffs to the instant case, Faamuli Pete Faamuli, stated that he wanted to raise the issue of the court's jurisdiction.  Justice Kruse responded that

---

[5] Specifically, the Alega Defendants alleged that Bluesky polluted land "permanently or periodically covered by tidal waters up to the line of mean high tide," which, pursuant to 48 U.S.C. § 1705, is "administered in trust" by the Government of American Samoa for the benefit of the people of American Samoa.

he would hear arguments relating to jurisdiction during the October 25, 2021 hearing.

Plaintiffs now move for an ex parte TRO, requesting that this court compel Justice Kruse "to not act and issue Orders in HCLT 28-2020 without any basis in jurisdiction." ECF No. 12 at PageID # 185. As in *Hueter v. Kruse*, Civ. No. 21-00226 JMS-KJM, Plaintiffs argue that Justice Kruse has violated, and continues to violate, Plaintiffs' due process rights under the United States Constitution. Plaintiffs also seek an order from this court pursuant to 28 U.S.C. § 1361 compelling the Secretary "to exercise her traditional plenary authority over the [American Samoan] Judiciary," "uphold the US Constitution," and "act against [Chief Justice] Kruse to compel him to uphold the US constitution. . . ." ECF No. 12 at PageID # 185.

### III. <u>STANDARDS OF REVIEW</u>

"The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction." *Brown Jordan Int'l, Inc. v. Mind's Eye Interiors, Inc.*, 236 F. Supp. 2d 1152, 1154 (D. Haw. 2002) (citation omitted); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (observing that an analysis of a request for a preliminary injunction is "substantially identical" to an analysis of a request for a temporary restraining order).

A preliminary injunction is an "'extraordinary and drastic remedy' . . . never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citations omitted). "To warrant a preliminary injunction, [Plaintiffs] must demonstrate that [they meet] all four of the elements of the preliminary injunction test established in [*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008)]." *DISH Network Corp. v. F.C.C.*, 653 F.3d 771, 776 (9th Cir. 2011). To meet the *Winter* elements, "a plaintiff must establish (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest." *BOKF, NA v. Estes*, 923 F.3d 558, 561-62 (9th Cir. 2019) (citation and quotation marks omitted). "[I]f a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)). Preliminary injunctive relief should always be denied, however, if the probability of success on the merits is low. *See Johnson v. Cal. State Bd. of Acct.*, 72 F.3d 1427, 1430 (9th Cir. 1995) (stating that "even if the balance of hardships tips decidedly in favor of the moving party, it must be shown

as an irreducible minimum that there is a fair chance of success on the merits" (citation omitted)).

Under Federal Rule of Civil Procedure 65, the court may issue a TRO without notice to the adverse party only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and the moving party "certifies in writing any efforts made to give notice and the reasons why [notice] should not be required."

Pursuant to the Mandamus Act, 28 U.S.C. § 1361, district courts have jurisdiction "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." "An order pursuant to § 1361 is available only if (1) the claim is clear and certain; (2) the official's or agency's duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt; and (3) no other adequate remedy is available." *Agua Caliente Tribe of Cupeno Indians of Pala Rsrv. v. Sweeney*, 932 F.3d 1207, 1216 (9th Cir. 2019) (internal quotation marks and citation omitted).

## IV. ANALYSIS

As an initial matter, the court finds that under the facts of this case, the court does not have authority to issue an injunction or mandamus against either Justice Kruse or the Secretary. And, even if the court did have authority, it would

deny the TRO Motion because Plaintiffs have failed to show a likelihood of success on the merits—there is no evidence that Justice Kruse or the Secretary have denied Plaintiffs their due process rights.

**A. The Relief Sought Against Justice Kruse**

Judicial officers are immune from claims for injunctive relief under § 1983 "unless a declaratory decree was violated or declaratory relief is unavailable." 42 U.S.C. § 1983; *see also Moore v. Urquhart*, 899 F.3d 1094, 1104-05 (9th Cir. 2018); *Gilliam v. Watanabe*, 2020 WL 5223778, at *4 (D. Haw. Sept. 1, 2020) (dismissing complaint against state court judge where the plaintiff's complaint did "not allege that 'a declaratory decree was violated or that declaratory relief was unavailable'"). And "[d]eclaratory relief against a judge for actions taken within his or her judicial capacity is ordinarily available by appealing the judge's order in state [or territorial] court." *Yellen v. Hara*, 2015 WL 8664200, at *11 (D. Haw. Dec. 10, 2015).

Plaintiffs argue that relief is unavailable to them because Justice Kruse issued a stay on HCLT 28-2020, and that stay has not been lifted. ECF No. 12 at PageID # 193. But the fact that a stay has issued does not mean that Plaintiffs cannot appeal Justice Kruse's decision to the High Court appellate division at an appropriate time. Further, American Samoa Code § 3.1007(b) specifically provides that "[n]either the Chief Justice, nor the Associate Justice, nor

any associate judge of the High Court shall sit in the appellate division of that court in the hearing and determination of any appeal from the decision of a case or question decided by him, or the decision of which he joined in the trial court." Thus, Justice Kruse is legally prohibited from sitting on a panel adjudicating an appeal from his trial-level decision.[6] Plaintiffs have utterly failed to show that appellate relief is unavailable.

And Plaintiffs have another avenue to seek declaratory relief—they may petition the Secretary of Interior directly. "[T]he Secretary has the authority to review decisions of the High Court to assure they comply with any standards of the United States Constitution found to apply to American Samoa." *Barlow v. Sunia*, 2019 WL 5929736, at *2 (D. Haw. Nov. 12, 2019) (quoting *Hodel I*, 637 F. Supp. at 1413 n.29). And "the Secretary has likewise acknowledged his or her power to intervene and review decisions of the High Court—even if he or she chooses not to exercise this power." *Id.* (citing *Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints v. Hodel*, 830 F.2d 374, 376, 378-79

---

[6] Further, the Secretary of Interior has discretion to "appoint . . . such Associate Justices as [she] may deem necessary" in cases where the ordinary panel would not be able to provide impartial review. Am. Sam. Const. art. III, § 3. And, indeed, the Secretary has done so many times before. *See Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints v. Hodel*, 637 F. Supp. 1398, 1413 (D.C. Cir. 1986) ("*Hodel I*") ("The Secretary of the Interior also frequently appoints as associate justices members of Article III federal courts in the United States to serve on the appellate division court.").

(D.C. Cir. 1987) ("*Hodel II*")). In short, Justice Kruse is immune from suit for injunctive relief under § 1983.

Mandamus against Justice Kruse is also improper because Justice Kruse is not within the purview of the Mandamus Act, 28 U.S.C. § 1361. That statute can be used to compel actions of an "officer or employee of the United States or any agency." Although Justice Kruse is under the plenary authority of the Secretary, his *function* is that of a territorial judge. And as a judge of a territorial court, Justice Kruse falls outside of the plain language of that statute. *See Chambersel v. Fla.*, 816 F. App'x 424, 425 (11th Cir. 2020) (per curiam) ("Federal courts lack the authority to issue a writ of mandamus to state courts under . . . the federal mandamus statute, 28 U.S.C. § 1361 . . . ."); *Rodriguez v. Ct. of Appeal*, 2013 WL 5603948, at *1 (C.D. Cal. Oct. 10, 2013), *aff'd* (Feb. 27, 2014) ("Federal district courts lack the power to issue writs of mandamus directing state courts, state judicial officers, or other state officials in the performance of their duties.").

## B.  The Relief Sought Against the Secretary

Plaintiffs seek injunctive relief and mandamus against the Secretary, citing *King v. Morton*, 520 F.2d 1140 (D.C. Cir. 1975). Specifically, Plaintiffs claim that the Secretary, by failing to take action against Justice Kruse, is "denying Plaintiffs due process" and thus they request that this court "compel the [Secretary] to take action against [Justice] Kruse for his violations of [Plaintiffs']

constitutional rights, including rights of due process." ECF No. 12 at PageID # 202. The relief sought is specious and unavailable to Plaintiffs.

"[T]he Secretary has the authority to review decisions of the High Court to assure they comply with any standards of the United States Constitution found to apply to American Samoa." *Barlow*, 2019 WL 5929736, at *2. But the authority to review High Court decisions does not create a duty that is "nondiscretionary, ministerial, and so plainly prescribed to be free from doubt." *Agua Caliente Tribe*, 932 F.3d at 1216. See *Hodel II*, 830 F.2d at 378 (explaining that the Secretary declined to intervene in High Court proceedings because "a decision to intervene in the judicial system of American Samoa 'cannot be taken lightly,' as any intervention might jeopardize the United States policy of 'fostering greater self-government and self-sufficiency without disturbing the traditional Samoan cultural values'"); *King*, 520 F.2d at 1146 (suggesting that a district court may be able to compel the Secretary to intervene in the American Samoa judicial system on a writ of mandamus pursuant to 28 U.S.C. § 1361 where the Secretary has a "clearly established, plainly defined and peremptory duty").

Here, the Secretary does not have a *duty* to intervene on Plaintiffs' behalf. In *King*, the D.C. Circuit considered whether it could enjoin the Secretary, as administrator of the American Samoa judicial system, from enforcing American Samoa court rules, American Samoa statutory provisions, and "rules and

regulations of the Secretary of Interior" that denied criminal defendants the right to trial by jury. 520 F.2d at 1143. Noting probable jurisdiction, the D.C. Circuit remanded to the district court, which found the rules to be unconstitutional. *See King v. Andrus*, 452 F. Supp. 11, 17 (D.D.C. 1977). The district court accordingly enjoined the Secretary, "his appointees, agents, employees, and all other persons subject to his authority and control from enforcing any judgment of criminal conviction against plaintiff obtained without according him a right to trial by jury." *Id.* From that case, it is clear that the Secretary has a duty to not actively enforce unconstitutional rules in American Samoa.

By contrast, here, Plaintiffs do not challenge a law or rule as unconstitutional. Rather, they ask the Secretary to intervene in ongoing litigation. And while the Secretary appears to have the power to review and overturn High Court decisions, her duty to intervene in individual cases is clearly discretionary. *Hodel I*, 637 F. Supp. at 1410 (holding that the Secretary's decision not to intervene in a High Court case was "not clearly erroneous or even an abuse of discretion"), *aff'd* 830 F.2d 374 (D.C. Cir. 1987). Plaintiffs' requested injunctive relief and mandamus against the Secretary are thus improper. If Plaintiffs wish to seek relief from the Secretary, the proper avenue is to petition her directly at an appropriate time, not to sue her in federal court.

## C. Plaintiffs Have Not Shown a Likelihood of Success on the Merits

Further, even if the court had the authority to issue a temporary restraining order against either Justice Kruse or the Secretary, the TRO Motion is premature. And even if not premature, the TRO Motion lacks any merit.

The TRO Motion appears to assume that the High Court will determine during the October 25, 2021 hearing that it has jurisdiction to rule on the Second Motion to Vacate, and that the Plaintiffs will be harmed by that ruling. But during the course of the litigation in HCLT 28-2020, Justice Kruse has explicitly recognized that he lacks the ability to consider the merits of the dispute unless a CID issues. For example, in his ruling on the initial motion to vacate, Justice Kruse stated, "I don't want to see you until you come with a CID from Samoan Affairs. As far as I'm concerned, the reason for the interim injunction was issued by the chief justice and not the court was to maintain the status quo." ECF No. 12-2 at PageID # 222. And during the October 8, 2021 hearing, after Plaintiff Faamuli told Justice Kruse that he wanted to raise an issue as to jurisdiction, Justice Kruse responded that he will hear the jurisdictional argument on October 25, 2021. ECF No. 12-1 at PageID # 216. In other words, the very premise of the TRO Motion is specious and unfounded—Justice Kruse has not found that he has jurisdiction to hear the Second Motion to Vacate.

But even if Justice Kruse determines that he has jurisdiction to consider the Second Motion to Vacate, Plaintiffs have utterly failed to show that such a determination would be a violation of their due process rights. Justice Kruse likely had jurisdiction to enter his initial November 12, 2020 ruling. Under American Samoan law, certain "interim" matters may be ruled on as apparently permitted by American Samoa Code § 43.0304. Alternatively, Justice Kruse's November 12, 2020 ruling may have been made pursuant to American Samoa Code § 43.0302, which permits him to rule on certain preliminary matters to prevent irreparable harm from occurring while the parties proceed before the Office of Samoan Affairs. If Justice Kruse had jurisdiction to enter the original November 12, 2020 Order, he certainly has jurisdiction to vacate or modify all or part of that order.

## V. CONCLUSION

The court takes this opportunity to provide a warning to Plaintiffs: Plaintiffs have filed multiple cases in this court, each having complex and unique jurisdictional issues. The court has spent an inordinate amount of time considering these issues, many of which are still pending before the court. But filings such as the instant TRO Motion, which is frivolous and appears to have been filed in bad faith, taxes the resources of the court. Moving forward, the court will not hesitate to sanction Plaintiffs for engaging in abusive litigation tactics.

The TRO Motion is meritless and is DENIED.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, October 19, 2021.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Hueter v. Kruse, et al.*, Civ. No. 21-00415 JMS-KJM, Order Denying Plaintiffs' Ex Parte Motion for Temporary Restraining Order, ECF No. 12