IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| STEVEN JAY PINCUS HUETER, ET AL., <br><br> Plaintiffs, <br><br> vs. <br><br> LEALAIALOA FRITZ MICHAEL KRUSE, ET AL., <br><br> Defendants. | CIV. NO. 21-00415 JMS-KJM <br><br> ORDER DISMISSING ACTION FOR CLAIM-SPLITTING |

## ORDER DISMISSING ACTION FOR CLAIM-SPLITTING

## I. INTRODUCTION

On October 19, 2021, this court issued an Order to Show Cause why the Complaint in this action—brought by Plaintiffs Steven Jay Pincus Hueter, Faamuli Pete Faamuli, and Michael S. Kirk (collectively, "Plaintiffs") against Defendants Lealaialoa Fritz Michael Kruse, Chief Justice of the High Court of American Samoa ("Justice Kruse"), and Debra Anne Haaland, Secretary of the Interior (the "Secretary")—should not be dismissed on the basis of impermissible claim-splitting.  *See* ECF No. 20.[1]  After reviewing Plaintiffs' Response, ECF No. 21, and for the reasons stated below, the court DISMISSES the action.

---

[1] Unless otherwise indicated, all docket citations are to Civ. No. 21-00415 JMS-KJM.

## II.  BACKGROUND

This action is the latest in a series of cases filed by Plaintiffs in which they name Justice Kruse and the Secretary as Defendants.  *See Hueter v. Kruse, et al.*, Civ. No. 21-00226 JMS-KJM ("*Hueter I*"); *Hueter v. AST Telecomm LLC, et al.*, Civ. No. 21-00377 JMS-KJM ("*Hueter II*").  Both *Hueter I* and *Hueter II* remain pending in this court.

In *Hueter I*,[2] Plaintiffs allege various claims related to a purported illegal ex parte communication between Justice Kruse and James L. McGuire ("McGuire"), an attorney in American Samoa, during an underlying case in the High Court of American Samoa docketed as HCLT 28-2020.  *See generally* ECF No. 14 in Civ. No. 21-00226 JMS-KJM.  Among other allegations, Plaintiffs assert that in his handling of HCLT 28-2020, Justice Kruse violated—and continues to violate—Plaintiffs' due process rights under 42 U.S.C. § 1983.  *See* ECF No. 33 at PageID ## 638-39 in Civ. No. 21-00226 JMS-KJM.  As relevant to the instant action, in *Hueter I*, Plaintiffs seek injunctive relief and damages against Justice Kruse and ask the court to compel the Secretary to exercise her plenary authority

---

[2] For purposes of this Order, the court examines the instant action against *Hueter I* only. Although there may be some impermissible claim-splitting between *Hueter I* and *Hueter II*, the court does not reach that issue here.

over American Samoa to prevent Justice Kruse from perpetrating any additional

violations of Plaintiffs' constitutional rights.  *See id*.

In the instant action (Civ. No. 21-00415 JMS-KJM), Plaintiffs make

substantially similar—and, in most cases, identical—allegations against Justice

Kruse and the Secretary.  More specifically, Plaintiffs in this action allege that

Justice Kruse violated Plaintiffs' due process rights under § 1983[3] and conspired

with the Secretary to deprive Plaintiffs of their civil rights under 42 U.S.C.

§ 1985(3).  ECF No. 1 at PageID ## 13-14.  And as to the Secretary, Plaintiffs

allege that she is "abrogating her responsibility and duty to exercise her plenary

authority" over the High Court of American Samoa by failing to prevent a

violation of their constitutional rights by Justice Kruse.  *Id*. at PageID ## 11-12.

---

[3] In both *Hueter I* and the instant action, Plaintiffs apparently allege that the Secretary also violated their due process rights under § 1983.  *See* ECF No. 127 at PageID # 1972 in Civ. No. 21-00226 JMS-KJM; *see also* ECF No. 1 at PageID # 13.  But a federal officer cannot be held liable for deprivation of civil rights under § 1983.  *See, e.g.*, *Billings v. United States*, 57 F.3d 797, 801 (9th Cir. 1995) (stating that "§ 1983 provides no cause of action against federal agents acting under color of federal law").

Liberally construed, however, the Plaintiffs' official capacity claims in both actions may be viewed as alleging a claim against the Secretary for prospective injunctive relief.  *See Schneider v. Smith*, 390 U.S. 17, 21-22 (1968); *Porter v. Califano*, 592 F.2d 770, 781 (5th Cir. 1979) ("[Plaintiff] would of course have a right to sue directly under the constitution to enjoin . . . federal officials from violating her constitutional rights." (citing *Arnett v. Kennedy*, 416 U.S. 134 (1974)); *Rhode Island Dep't of Env't Mgmt. v. United States*, 304 F.3d 31, 41 (1st Cir. 2002); *see also* Erwin Chemerinsky, *Federal Jurisdiction*, § 9.2.2 (8th ed. 2021).

Also, Plaintiffs' claims against the Secretary in both actions, liberally construed, may be considered to allege a civil rights action under *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  But the court need not decide here whether a cognizable *Bivens* claims has been asserted in either case.

On October 14, 2021, Plaintiffs filed the instant Complaint against Justice Kruse and Secretary Haaland.  ECF No. 1.  That same day, they also filed a Motion for Temporary Restraining Order against Defendants ("October 14 TRO"). ECF No. 2.  On October 16, 2021, Plaintiffs filed an ex parte TRO Motion, ECF No. 12, which the court denied on October 19, 2021, ECF No. 19.  Also on October 19, 2021, the court issued an Order staying the action, holding the October 14 TRO in abeyance, and directing Plaintiffs to show cause as to why their Complaint should not be dismissed on the basis of impermissible claim-splitting ("OSC").  ECF No. 20.  Plaintiffs filed their Response to the OSC on October 21, 2021.  ECF No. 21.

## III.  <u>STANDARD OF REVIEW</u>

"'District courts have discretion to control their dockets by dismissing duplicative cases.'"  *Clayton v. Dist. of Columbia*, 36 F. Supp. 3d 91, 94 (D.D.C. 2014) (quoting *Katz v. Gerardi*, 655 F.3d 1212, 1217 (10th Cir. 2011)).  Generally, plaintiffs have "no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant." *Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007), *overruled on other grounds by Taylor v. Sturgell*, 553 U.S. 880, 904 (2008).  The purpose of this general restriction against claim-splitting "is twofold: to ensure fairness to litigants and to conserve judicial resources."  *Greene v. H&R Block E. Enters.*,

4

*Inc.*, 727 F. Supp. 2d 1363, 1367 (S.D. Fla. 2010); *see also Katz*, 655 F.3d at 1217

("The rule against claim-splitting requires a plaintiff to assert all of its causes of

action arising from a common set of facts in one lawsuit.  By spreading claims

around in multiple lawsuits[,] . . . parties waste 'scarce judicial resources' and

undermine 'the efficient and comprehensive disposition of cases.'" (quoting

*Hartsel Springs Ranch of Colo., Inc. v. Bluegreen Corp.*, 296 F.3d 982, 985 (10th

Cir. 2002))).  "*Sua sponte* dismissal of an action duplicative of a parallel action

already pending in another federal court is allowable as an exercise of wise judicial

administration."  *Clayton*, 36 F. Supp. 3d at 94–95 n.1 (citation and internal

quotation marks omitted).

       Although the test for determining whether a suit is duplicative is

borrowed from the test for claim preclusion, *Adams*, 487 F.3d at 688, final

judgment on the merits in the first action is obviously not required when making a

claim-splitting determination, *see Hartsel*, 296 F.3d at 987 n.1 ("[I]n the claim-

splitting context, the appropriate inquiry is whether, assuming that the first suit

were already final, the second suit could be precluded pursuant to claim

preclusion.").  *See also* 18 Charles Alan Wright & Arthur R. Miller, *Federal*

*Practice and Procedure* § 4406 (3d ed. 2016) (stating that the principles of claim-

splitting "are similar to claim preclusion, but . . . do not require a prior judgment").

To determine whether a suit is duplicative, courts in the Ninth Circuit "examine whether the causes of action and relief sought, as well as the parties or privies to the action, are the same." *Adams*, 487 F.3d at 689.  For the first prong, "there must be the same rights asserted and the same relief prayed for; the relief must be founded upon the same facts, and the . . . essential basis[] of the relief sought must be the same." *Id.* (quoting *United States v. The Haytian Republic*, 154 U.S. 118, 124 (1894)).  And for the second prong, "[t]here must be the same parties, or, at least, such as represent the same interests." *Id.* (quoting *The Haytian Republic*, 154 U.S. at 124).

Plaintiffs are appearing pro se; consequently, the court liberally construes their Complaint and resolves all doubts in their favor.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (explaining that "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers") (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987).

## IV.  <u>DISCUSSION</u>

### A.    **The Successive Causes of Action and Relief Sought Are the Same**

To determine the first prong of the duplicative action test—that is, whether successive causes of action and relief sought are the same—courts in the Ninth Circuit apply a "transaction test."  *Adams*, 487 F.3d at 689.  "Whether two

6

events are part of the same transaction . . . depends on whether they are related to the same set of facts and . . . could conveniently be tried together." *Id.*  The transaction test examines four factors: whether (1) rights or interests established in a prior judgment would be destroyed or impaired by the prosecution of the later action; (2) evidence that is substantially the same is presented in the successive action; (3) the successive actions involve infringement of the same right; and (4) the successive actions arise out of the same "transactional nucleus of facts." *See id*.  The last factor is the "most important" criterion in this comparison.  *Id*.

Examining the "most important" factor first, it is clear that here, the cases share the same "transactional nucleus of facts."  Both the complaint in this case and in *Hueter I* center on the following alleged events:[4]

> On September 23, 2020, AST Telecomm, d/b/a Bluesky
> Communications ("Bluesky"), operating as a
> telecommunications carrier in American Samoa, filed a
> "Complaint for Permanent Injunction" in the High Court
> of American Samoa against several of the Plaintiffs in
> this matter—Michael Kirk and Faamuli Pete Faamuli, as
> well as the Alega Preservation Institute and Rosalia Tisa
> Faamuli (together, "Alega Defendants").[5]  That case,

---

[4] This summary is drawn from the recitation of facts underlying both actions as stated in the court's October 19, 2021 Order Denying Plaintiffs' Ex Parte Motion for Temporary Restraining Order.  *See* ECF No. 19 at PageID ## 262-67 (drawing facts from Plaintiffs' instant Complaint, ECF No. 1, and the record in *Hueter I*, Civ. No. 21-00226 JMS-KJM).

[5] Bluesky apparently initiated the case as simply "Bluesky," and was therefore treated by the High Court as a fictitious entity until it was properly identified as AST Telecomm, LLC, d/b/a/ Bluesky Communications.  *See* ECF No. 85-5 at PageID # 1141 n.1 in Civ. No. 21-00226 JMS-KJM.

docketed as HCLT 28-2020, was originally before Chief
Justice Kruse, Associate Judge Faʻamausili, and
Associate Judge Muasau.  In its Complaint in that case,
Bluesky alleged that it has a prescriptive easement to
hang its telecommunications equipment in the Alega
Sanctuary, and that the Alega Defendants were
interfering with Bluesky's attempts to maintain and
repair its equipment within the preserve.  Bluesky also
alleged that the Alega Defendants were engaging in a
"smear campaign" against Bluesky by publishing
materials stating that Bluesky was polluting the marine
environment with telecommunications detritus.

On November 12, 2020, the three-judge panel issued an
"Order Denying [Bluesky's] Motion for a Preliminary
Injunction and to Maintain the Status Quo" (the
"November 12, 2020 Order").  *See* ECF No. 12-3.  The
court opined that Bluesky had failed to supply sufficient
evidence that it possessed an easement over the Alega
Defendants' land.  To the contrary, the High Court
concluded that "[w]ithout more to evince the
landowner's consent, [Bluesky's] rerouting [of
infrastructure through Alega] constitutes a blatant
trespass."  The court also denied Bluesky's request to
enjoin the Alega Defendants' publications, explaining
"we are not inclined to invoke equity to enjoin [the
Alega Defendants'] first amendment protected activity
in the way of printed posters deemed offensive to
[Bluesky]."

Pursuant to American Samoa Code § 43.0304,[6] which
authorizes a justice to "make such interim orders as he

---

[6] Section 43.0304, entitled "Interlocutory orders," states:

In any proceeding, a justice may, pending final determination of
the matter by the Land and Titles Division, make such interim
orders as he thinks appropriate.  The associate judges sitting in
matai title disputes shall refer all requests for ex parte or interim
orders to the Chief Justice or Associate Justice for appropriate

(continued . . . )

thinks appropriate" in proceedings before the Land and Titles Division, the court ordered both parties to "maintain the status quo for at least a period of 180 days" during which the parties were to attempt to reach an amicable solution.  The court also enjoined Bluesky from "failing, to remove all its wiring-related detritus and decaying poles left lying on and around the Alega coastline and beach area."

Finally, although the court issued this preliminary relief, it explained that it lacked jurisdiction to provide any dispositive rulings on the merits.  Specifically, the court found there to be "contention among the parties as to whether the subject matter land is 'communal' or 'individually-owned,'" with the Alega Defendants having "put at issue the communal landholding nature of Alega." And, the court explained, it lacked jurisdiction on the merits over cases concerning communally-owned land until the parties completed mandatory "pretrial proceedings pursuant to A.S.C.A. § 43.0302" before the Office of Samoan Affairs.

On March 2, 2021, Bluesky filed a "Motion to Vacate and/or Amend the November 12, 2020 Order."  Bluesky asked the High Court to vacate its ruling that Bluesky "is so enjoined from failing to remove all its wiring-related detritus and decaying poles lying on and around the Alega coastline and beach area."  And Bluesky asked the court to enjoin the Alega Defendants from "interference of Bluesky's . . . removal of its cables and wires in Alega."  Bluesky alleged that it had been attempting to comply with the November 12, 2020 Order, but that doing so required coordination with the American Samoa Power Authority ("ASPA")—the public utility that owns the poles to which Bluesky's cables are attached. Bluesky further alleged that the Alega Defendants were

---

action, unless the associate judges are in unanimous agreement thereon from entry of judgment and a trial de novo shall be held thereon.

preventing its clean-up attempts by "unreasonably demand[ing] that Bluesky is not to coordinate and communicate with ASPA regarding the cleanup of debris and poles in Alega."

The High Court held a hearing on the motion on March 31, 2021, presided over by Justice Kruse and Associate Judge Muasau.  *See* ECF No. 12-2.  During the hearing, Justice Kruse stated that he was "not inclined" to grant Bluesky's motion.  He also reiterated that the court lacked jurisdiction over the controversy until the parties obtained a certificate of irreconcilable dispute ("CID") from the Office of Samoan Affairs.  Justice Kruse further explained that the High Court would be joining the American Samoa Government to the case as a necessary party because the Alega Defendants alleged, among other things, that Bluesky polluted areas under the Government's control.[7]  Finally, Justice Kruse reiterated that the November 12, 2020 Order enjoined both parties from disrupting the "status quo" and required Bluesky to remove their detritus from the ground in Alega.  The High Court then issued a formal Order on April 6, 2021 that joined the American Samoa Government as a necessary party to the proceedings and imposed a stay on any further filings going to the merits until the parties obtained a CID from the Office of Samoan Affairs.

. . . Bluesky subsequently filed a Second Motion to Vacate and/or Amend the November 12, 2020 Order ("Second Motion to Vacate").  An initial hearing was held on the Second Motion to Vacate on October 8, 2021 before Justice Kruse and Associate Judges Pomele and Tofili.  *See* ECF No. 1-1.  During that hearing, Justice Kruse did not address the merits of the motion, but instead continued the hearing until October 25, 2021.

---

[7] Specifically, the Alega Defendants alleged that Bluesky polluted land "permanently or periodically covered by tidal waters up to the line of mean high tide," which, pursuant to 48 U.S.C. § 1705, is "administered in trust" by the Government of American Samoa for the benefit of the people of American Samoa.

> One of the Plaintiffs to the instant case, Faamuli Pete
> Faamuli, stated that he wanted to raise the issue of the
> court's jurisdiction.  Justice Kruse responded that he
> would hear arguments relating to jurisdiction during the
> October 25, 2021 hearing.

ECF No. 19 at PageID ## 262-67.

As in *Hueter I*, Plaintiffs in the instant action allege that Justice Kruse

violated—and continues to violate—their constitutional due process rights "by

acting and issuing orders in HCLT 28-2020 without any basis in jurisdiction."

ECF No. 1 at PageID ## 13-14; *see also* ECF No. 33 at PageID ## 638-39 in Civ.

No. 21-00226 JMS-KJM (alleging that Justice Kruse had "ex-parte

communications" that led to a "verbal Order" in violation of Plaintiffs' due process

rights under § 1983).[8]  Plaintiffs also allege in both actions that the Secretary is in

violation of her responsibility to exercise her plenary authority over the High Court

to prevent Justice Kruse from violating Plaintiffs' due process rights through his

handling of HCLT 28-2020.  Both actions are based on allegations arising wholly

from HCLT 28-2020.  The actions thus share the same "transactional nucleus of

facts," satisfying the "most important" factor of the transaction test.

---

[8] In *Hueter I*, the court ordered Plaintiffs to submit supplemental briefing addressing several questions to establish "whether the court has subject-matter jurisdiction over [*Hueter I*]." ECF No. 29 in Civ. No. 21-00226 JMS-KJM.  Plaintiffs' supplemental briefing addressed the legal bases for Plaintiffs' claims (that is, which laws each Defendant is alleged to have violated), as well as the legal bases for subject-matter jurisdiction over Plaintiffs claims against each *Hueter I* defendant.  *See* ECF No. 33 in Civ. No. 21-00226 JMS-KJM; *see also* ECF No. 29 in Civ. No. 21-00226 JMS-KJM.

Turning next to the question of whether a final judgment in *Hueter I* would establish rights or interests that "would be destroyed or impaired by prosecution of the second action," *Adams*, 487 F.3d at 689, the common nucleus of facts in both suits indicates that this factor of the transaction test is also met. Stated differently, a final judgment in *Hueter I* would have a preclusive effect on the instant action—it would decide whether Justice Kruse has violated Plaintiffs' due process rights under § 1983 in his handling of HCLT 28-2020, and whether the Secretary must be compelled to "exercise her plenary authority" against Justice Kruse (or whether such relief is even possible as a matter of law). And although Plaintiffs' § 1985(3) allegation that the Secretary conspired with Justice Kruse to deprive Plaintiffs of their due process rights is raised for the first time in the instant action, that allegation arises from the same transactional nucleus of facts as Plaintiffs' allegations in *Hueter I*. Plaintiffs could have raised this claim in the earlier-filed case, but did not.[9] Thus, Plaintiffs' § 1985(3) claim against Justice

---

[9] Plaintiffs admit that they filed the instant action, in part, because "the Court might have denied any Motion for leave to file an Amended Complaint [in Civ. No. 21-00226 JMS-KJM]." ECF No. 21 at PageID # 292. Although Plaintiffs did not actually seek leave to file a second amended complaint in *Hueter I*, this tactic provides a stark example of the underlying purpose of the restriction against claim-splitting. Initiating a new suit in an attempt to avoid an unfavorable ruling in a prior action undermines the integrity of the judicial process and is not permissible under the doctrine of claim-splitting. *See Adams*, 487 F.3d at 688 (stating that where a plaintiff seeks and is denied leave to amend, that denial "'does not give [the plaintiff] the right to file a second lawsuit based on the same facts'" (quoting *Hartsel*, 296 F.3d at 989)); *see also Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1025 (9th Cir. 2011) (referring to actions dismissed on the basis of claim-splitting as those in which "a plaintiff was, in effect, attempting to avoid an

(continued . . . )

Kruse and the Secretary is not determinative for purposes of the claim-splitting analysis.[10]  *See Adams*, 487 F.3d at 691.

Plaintiffs also present substantially the same evidence in the successive actions.  In fact, all but one exhibit attached to the instant Complaint has been submitted in *Hueter I*.  *Compare* ECF Nos. 1-2, 1-3, 1-4, *with* ECF Nos. 14-6 (Appendix 00, Plaintiffs' Amended Complaint), 127-1, 127-2, 127-3 (Appendices A–C, Plaintiffs' Opposition to Federal Defendants' Motion to Dismiss) in Civ. No. 21-00226 JMS-KJM.  These exhibits all relate to proceedings in HCLT 28-2020.[11]  *Id*.

The sole "new evidence" offered in the instant action is a transcript from the October 8, 2021 hearing held by Justice Kruse in HCLT 28-2020.  *See* ECF No. 1-1.  But Plaintiffs simply offer this transcript as further evidence that Justice Kruse is supposedly violating their due process rights by continuing to

---

unfavorable prior ruling in one case by filing essentially the same claims in a new case"), *abrogated on other grounds by Comcast Corp. v. Behrend*, 569 U.S. 27 (2013).

[10] In both pending actions, Plaintiffs allege that Justice Kruse violated § 1985(3). *Compare* ECF No. 1 at PageID ## 13-14 (alleging that Justice Kruse conspired with the Secretary to deprive Plaintiffs of their due process rights), *with* ECF No. 127 at PageID # 1971 in Civ. No. 21-000226 JMS-KJM (alleging that Justice Kruse conspired with McGuire to deprive Plaintiffs of their due process rights).

[11] Although one of the exhibits offered in both actions—the message from McGuire—is not directly related to HCLT 28-2020, Plaintiffs offer it in support of the same proposition in both cases: that "HCLT 28-2020 was not a dispute over land rights to the Alega beach or tidal area" and McGuire "has a separate suit before the Office of Samoan Affairs seeking access to Alega beach."  ECF No. 1 at PageID # 20; ECF No. 127 at PageID # 1953 in Civ. No. 21-00226 JMS-KJM.

preside over HCLT 28-2020.  As the court stated in its denial of Plaintiffs' ex parte

TRO motion, "[d]uring the [October 8, 2021] hearing, Justice Kruse did not

address the merits of the [Second Motion to Vacate filed by Bluesky], but instead

continued the hearing until October 25, 2021."  ECF No. 19 at PageID # 266; *see*

*also id*. at PageID # 275 ("[D]uring the course of the litigation in HCLT 28-2020,

Justice Kruse has explicitly recognized that he lacks the ability to consider the

merits of the dispute unless a [certificate of irreconcilable dispute from the Office

of Samoan Affairs] issues.").  The October 8, 2021 hearing transcript does nothing

to establish that the instant action arises out of a "transactional nucleus of facts"

different than *Hueter I.  See Adams*, 487 F.3d at 690 (determining that an

"additional evidentiary detail" raised by plaintiffs in a later-filed case was

"scarcely enough to establish that the [successive] lawsuit arises out of a different

'transactional nucleus of facts' than that which generated the [first] suit" (quoting

*Constantini v. Trans World Airlines*, 681 F.2d 1199, 1202 (9th Cir. 1982))); *cf.*

*Int'l Union of Operating Eng'rs-Employers Constr. Indus. Pension Welfare &*

*Training Tr. Funds v. Karr*, 994 F.2d 1426, 1430 (9th Cir. 1993) ("The fact that

some different evidence may be presented in this action . . . does not defeat the bar

of res judicata.").  Accordingly, the "same evidence" factor of the transaction test

is satisfied.

And as for the final factor of the transaction test—whether Plaintiffs allege violation of the same rights in both actions—it is evident that they do. Specifically, Plaintiffs assert in both actions that Justice Kruse violated their due process rights under § 1983. *Compare* ECF No. 1 at PageID ## 13-14, *with* ECF No. 33 at PageID ## 638-39 *and* ECF No. 127 at PageID ## 1969-76 in Civ. No. 21-000226 JMS-KJM. Also in both actions, Plaintiffs sue the Secretary "to compel her to exercise her traditional plenary authority over the American Samoa Judiciary" in order to prevent Justice Kruse from continuing to violate Plaintiffs' constitutional rights through his handling of HCLT 28-2020. ECF No. 1 at PageID # 23; *see also* ECF No. 14 at PageID ## 251-52 *and* ECF No. 33 at PageID # 638 in Civ. No. 21-00226 JMS-KJM.

Moreover, Plaintiffs seek substantially the same relief in both actions. Against Justice Kruse, Plaintiffs seek in both cases a permanent injunction as well as compensatory and punitive damages for the infringement of their due process rights. *Compare* ECF No. 1 at PageID ## 25, 27, *with* ECF No. 14 at PageID ## 267-69 in Civ. No. 21-00226 JMS-KJM. Against the Secretary, Plaintiffs ask in both cases that the court "compel" her to exercise her plenary authority over Justice Kruse.[12] *Compare* ECF No. 1 at PageID # 26, *with* ECF No. 33 at PageID

---

[12] The specific measures Plaintiffs ask that the Secretary be compelled to take differ semantically, but not substantively, between the cases. In *Hueter I*, they ask that the Secretary

(continued . . . )

# 638 in Civ. No. 21-00226 JMS-KJM.  In the present case, Plaintiffs seek

additional—but not substantively different—relief.  *See* ECF No. 1 at PageID

## 27-28 (seeking nominal damages and declaratory relief against both Justice

Kruse and the Secretary, as well as punitive damages against the Secretary).

After examining the four factors of the "transaction test" as well as the

relief sought, the first prong of the duplicative action test is clearly satisfied.

## B.     Parties or Privies Are the Same in Both Actions

The court now examines the second prong of the duplicative action

test, whether the parties or privies to the actions are the same.  And it is plain that

they are.  In both actions, Justice Kruse and the Secretary are defendants named in

their individual and official capacities, and the plaintiffs are the same.[13]

Plaintiffs argue that because McGuire is named in *Hueter I* but not

named in the instant action, the successive actions cannot be duplicative.  *See* ECF

---

"coerce and compel [Justice Kruse] to cease interfering with cleanup of pollution, cease associating with violations of the Endangered Species Act by interfering with cleanup of pollution, and to cease violat[ing various codes of conduct and ethics]."  ECF No. 33 at PageID # 638 in Civ. No. 21-00226 JMS-KJM.  In the instant action, Plaintiffs ask that the Secretary be compelled to "admonish, discipline, and remove [Justice Kruse] from his role as Chief Justice of American Samoa . . . for acts that violate . . . Plaintiffs' rights of due process by acting and issuing Orders in HCLT 28-2020 without any basis in jurisdiction."  ECF No. 1 at PageID # 26.  Both requests for relief relate to Justice Kruse's authority over and actions in HCLT 28-2020.

[13] In addition to the current Plaintiffs, *Hueter I* originally included Rosalia Tisa Faamuli as a Plaintiff.  *See* ECF No. 14 at PageID ## 244-45 in Civ. No. 21-00226 JMS-KJM.  But by motion filed on June 25, 2021, ECF No. 45 in Civ. No. 21-00226 JMS-KJM, Ms. Faamuli was voluntarily terminated as a plaintiff to that action.  *See* ECF No. 48 in Civ. No. 21-00226 JMS-KJM.

No. 21 at PageID # 292.  But even when the defendants in each suit are not identical, a court may dismiss a second suit—in whole or in part—as duplicative to the extent the claims and factual allegations in both suits are the same and the actions of any newly-named defendants form a partial basis for the previous suit. *See, e.g.*, *M.M. v. Lafayette Sch. Dist.*, 681 F.3d 1082, 1091 (9th Cir. 2012) (affirming dismissal of claims that were duplicative of those asserted in a prior action despite there being newly-named defendants).  Here, there are no "newly-named" defendants; all parties to *Hueter I* are parties to the instant action, thus satisfying the second part of the duplicative action test.

## C.      Consolidation Is Not Appropriate Here

In Plaintiffs' Response to the OSC, they request that the court "consolidate[,] rather than dismiss[]," the instant action.  ECF No. 21 at PageID # 292.  Under Federal Rule of Civil Procedure 42(a), a court may consolidate any actions that "involve a common question of law or fact."  A "district court has broad discretion under this rule to consolidate cases pending in the same district." *Investors Rsch. Co. v. United States Dist. Ct. for Cent. Dist. of Cal.*, 877 F.2d 777, 777 (9th Cir. 1989); *see also* 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2383 (3d ed. 2008) ("The district court is given broad discretion to decide whether consolidation under Rule 42(a) would be desirable and the district judge's decision inevitably is highly contextual . . . .").

17

And to "[t]he limited extent to which [the Supreme Court] has addressed consolidation since adoption of Rule 42(a)," it the Court has supported the principle that although consolidation merges different actions, it "is never so complete . . . as to deprive any party of any substantial rights which he may have possessed had the actions proceeded separately"—"[t]hus, separate verdicts and judgments are normally necessary." *Hall v. Hall*, 138 S. Ct. 1118, 1130 (2018) (quotation marks and internal citation omitted).

Here, consolidation is not appropriate. *Hueter I* and the instant action share more than "a common question of law or fact." As the foregoing claim-splitting analysis indicates, the actions are duplicative, not merely related. The instant action is a claim-splitting maneuver that was, by Plaintiffs' own admission, brought at least in part to avoid a possible unfavorable ruling. *See* ECF No. 21 at PageID # 292. Thus, the court declines to consolidate the cases under Rule 42. *See Clayton*, 36 F. Supp. 3d at 94 ("[A] district court is not required to consolidate actions; the court can generally decide instead to dismiss a duplicative and later-filed action, stay a later-filed action pending resolution of the previously filed action, or enjoin the parties from proceeding with a later-filed action.").

## V.  **CONCLUSION**

For the foregoing reasons, the court DISMISSES the instant action with prejudice for impermissible claim-splitting.  The Clerk of Court is directed to close the case file.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, November 10, 2021.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Hueter v. Kruse, et al.*, Civ. No. 21-000415 JMS-KJM, Order Dismissing Action for Claim-Splitting